PEOPLE v BANKSTON

1. CRIMINAL LAW—RIGHT TO REMAIN SILENT—PROSECUTOR'S QUESTIONS.

   The questioning of a defendant concerning the reasons for his exercise of his right to remain silent upon arrest was permissible where defense counsel had already brought out this information on direct examination, and the prosecutor's questions and defendant's answers added nothing to the jury's knowledge.

2. WITNESSES—CRIMINAL LAW—IMPEACHMENT—JUVENILE RECORD—HARMLESS ERROR.

   A witness may be impeached by use of prior juvenile convictions; however, a trial judge's refusal to permit impeachment of a witness by use of juvenile records was harmless error where the witness had no juvenile record.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES—UNANIMITY—OBJECTION.

   Instructing a jury that it must unanimously agree that a defendant is innocent of the charged crime before it may consider any lesser included offenses is reversible error, even in the absence of defense objection.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES—UNANIMITY.

   Instructions to the jury which indicated a logical method whereby the various possible verdicts could be considered in an orderly sequence were not coercive or restrictive where the instructions did not require unanimous agreement of innocence of the charged crime before a lesser included offense could be considered.

Appeal from St. Clair, Halford I. Streeter, J.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 640.
[2] 58 Am Jur, Witnesses § 736.
[3, 4] 21 Am Jur 2d, Criminal Law §§ 185, 494.

Submitted Division 2 March 10, 1975, at Detroit. (Docket No. 19631.) Decided May 28, 1975.

Willie E. Bankston was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter E. Deegan,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

*Jessica R. Cooper,* Assistant State Appellate Defender, for defendant.

Before: V. J. Brennan, P. J., and J. H. Gillis and D. F. Walsh, JJ.

J. H. Gillis, J. On December 6, 1973, defendant was convicted by a jury of first-degree murder.[1] He was sentenced to mandatory life imprisonment, and appeals as of right.

On September 3, 1972, defendant accompanied Tyrone and Timothy Manns for an automobile ride out in the country. They stopped in an isolated area. Defendant testified that after the car stopped, Tyrone Manns pulled a gun and attempted to shoot him. Defendant wrestled the gun away from Tyrone, and then shot and killed him. Bankston claimed that Tyrone was angry with him because he had rebuffed Tyrone's sexual advances made a few weeks earlier. Timothy Manns, decedent's younger brother and the only eyewitness to the shooting, told a different story. According to Timothy, defendant ordered the car stopped. Defendant then pulled the gun and shot Tyrone. Timothy escaped from the car and ran. Timothy claimed that defendant killed Tyrone because he blamed

---

[1] MCLA 750.316; MSA 28.548.

Tyrone for causing the breakup of his relationship with Kathy Manns, sister of Timothy and Tyrone.

After defendant shot decedent, he drove to the police station and surrendered himself. He told the police that he had shot Manns, and told them where to find the body. He was then given his *Miranda*[2] warnings, and said nothing further.

At trial, defense counsel questioned defendant about the admissions made to the police. Defendant admitted that he told the police he killed Manns. He admitted that he was warned of his right to remain silent, and that after receiving this warning, he chose to say nothing more. He also admitted that he said nothing to the police about Tyrone attacking him. He testified that he told only his attorney that the shooting was in self-defense.

Despite the fact that these answers were elicited by defense counsel, defendant claims that the following two questions, asked by the prosecutor on cross-examination, require reversal:

> *"Q.* How come you didn't tell anybody about this occurrence [Tyrone attacking defendant] prior to this?
>
> *"A.* Exactly what happened?
>
> *"Q.* Yes.
>
> *"A.* Because after he read my rights, I didn't feel like I should say nothing *[sic]."*

In most situations, this line of questioning by the prosecutor would be impermissible. *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973). However, in this case, the prosecutor's questions, and defendant's answers, added nothing to the jury's knowledge. Defense counsel had already brought all of this information out on direct examination. The

---

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

rationale of *Bobo, supra,* is inapplicable here; hence we find no error.

Defendant asserts error in that the trial judge erroneously restricted his attempts to impeach the credibility of Timothy Manns. Defendant is correct in his contention that, under Michigan law, a witness may be impeached by use of prior juvenile "convictions".[3] In this case, however, the trial transcript reveals that Timothy Manns had no juvenile record, and so any misinterpretation of the law by the trial judge was harmless error.

Defendant next contends that the instructions to the jury were erroneous in many aspects. First, he argues that the following charge was coercive and restrictive because it mandated the order in which the jury should consider the charged offense and its lesser included offenses:

"Now, ladies and gentlemen, in this case as I have stated before, there are four verdicts possible, and I have explained to you the basis for each one of those verdicts.

"You will first deliberate and consider whether or not the defendant is guilty of murder in the first degree. If you are not satisfied beyond a reasonable doubt that he is so guilty, you will next consider whether or not the defendant is guilty of murder in the second degree. If you are not satisfied beyond a reasonable doubt he is so guilty, you will next consider whether or not he is guilty of manslaughter. If you are not satisfied beyond a reasonable doubt he is guilty of manslaughter, your verdict will be not guilty."

In *People v Ray,* 43 Mich App 45; 204 NW2d 38 (1972), this Court held erroneous a jury charge

---

[3] *People v Davies,* 34 Mich App 19; 190 NW2d 694 (1971); *People v Basemore,* 36 Mich App 256; 193 NW2d 335 (1971); *People v Yacks,* 38 Mich App 437; 196 NW2d 827 (1972); *People v Meadows,* 46 Mich App 741; 208 NW2d 593 (1973); *People v Vail,* 49 Mich App 578; 212 NW2d 268 (1973).

which required the jury to unanimously agree that defendant was innocent of the charged crime before the jury could consider any lesser included offenses. This charge was held to be "coercive, unduly restrictive, and reversible", even in the absence of defense objection.

The next case which considered this type of jury charge was *People v James,* 51 Mich App 777; 216 NW2d 473 (1974). That case seemingly accepted the reasoning of *Ray, supra,* but distinguished it on the basis that the *James, supra,* charge did not require unanimous agreement on defendant's innocence of the charged offense before lesser offenses would be considered. Absent the unanimity requirement, *James* found no prejudice in this type of charge.[4]

In *People v Harmon,* 54 Mich App 393; 221 NW2d 176 (1974), the Court considered a jury charge which it found to be "basically identical" to the one given in *Ray, supra:*

"Before you can go or consider the lesser included offenses, you must first then determine that he did not commit that crime. If you consider that and find and are satisfied from your deliberations that he did not commit the crime as charged, then you can consider the lesser included offenses and only then." *Harmon, supra,* at 394; 221 NW2d at 177.

The *Harmon* Court did not discuss *People v James, supra,* nor did it discuss the fact that the charge they were considering did not require unanimity as the *Ray* charge had.

We approve of the decision in *People v Ray, supra.* However, we find the charge given in the instant case, as well as the *Harmon* charge, factu-

[4] *See also, People v Robert Hall,* 56 Mich App 10; 223 NW2d 340 (1974).

ally distinguishable. In neither of those two charges is there the coercive requirement of unanimous agreement as was found in *Ray, supra.* We agree with the Court in *People v Bates*[5] that a charge such as the one given in this case is not prejudicial, rather it "merely indicated a logical method whereby the various possible verdicts would be considered in an orderly sequence".[6]

The remainder of the instruction to the jury, taken as a whole, adequately informed them of the applicable law. *People v Hodo,* 51 Mich App 628; 215 NW2d 733 (1974), *People v Harper,* 43 Mich App 500; 204 NW2d 263 (1972).

Defendant's other allegations of error do not warrant discussion.

Affirmed.

---

[5] *People v Bates,* 55 Mich App 1; 222 NW2d 6 (1974).

[6] *Bates, supra,* at 6; 222 NW2d 9.